IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY FULLILOVE, ) | |
| ) | |
| Plaintiff, ) | Case No.   24 C 2875 |
| ) | |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| CITY OF CHICAGO, RICHARD PINA, in his ) | |
| individual capacity; RYAN SCHAFFER, in his ) | |
| individual capacity; DUBLIN BAR & GRILL, ) | |
| INC., d/b/a Dublin's Bar & Grill, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Henry Fullilove has filed a first amended complaint that names as defendants the City of Chicago; two Chicago Police Officers, Richard Pina and Ryan Schaffer (the "Officers"), in their individual capacities; and Dublin's Bar & Grill.  (Doc. 1).   Plaintiff alleges that on April 11, 2022, he tried to enter Dublin's, was refused entry, and was then unlawfully arrested and maliciously prosecuted for disorderly conduct outside of Dublin's.   His complaint asserts four counts: a federal claim under 42 U.S.C. § 1983 against the Officers for restriction of movement, false arrest, and malicious prosecution in violation of the Fourth Amendment (Count I); an Illinois state law claim for malicious prosecution against all defendants (Count II); an Illinois state law claim for a hate crime against Pina, the City, and Dublin's (Count III); and an Illinois state law claim for indemnification against the City (Count IV).   The City and the Officers have moved to dismiss all four counts.  (Doc. 10).   For the below reasons, the court grants the motion to dismiss on Counts II and III and converts the motion to dismiss on Counts I and IV to a Rule 56 motion for summary judgment.

## **BACKGROUND**

Plaintiff is an African American male. He alleges that on April 11, 2022, he and his friend (also an African American male) tried to enter Dublin's to get food and drinks, but Dublin's bouncer, who was white, refused them. According to Plaintiff, when Plaintiff asked why, the bouncer became verbally aggressive and ordered them to get away from the door, telling them they were not welcome—all while continuing to allow white people into the bar. Plaintiff says that when he then complained about this discriminatory act, the bouncer became more aggressive, cursed, and adopted a fighting stance.

Plaintiff alleges that he then spotted a Chicago police officer sitting in his patrol car across the street (later identified as Pina) and approached him to let him know what happened. In response, Plaintiff says, Pina gave Plaintiff a menacing look, flicked a cigarette in Plaintiff's direction, swore at Plaintiff and ordered him to go away, and seemed to lean toward Plaintiff holding what appeared to be his gun holster. Plaintiff asserts that Pina then drove off and Plaintiff went back to Dublin's to speak to a manager.

At that point, Plaintiff alleges, other Chicago police officers arrived at the scene, led by Schaffer—a Sergeant. Plaintiff says that Schaffer was rude and verbally aggressive toward him and aggressively scolded him, ordering him to go home. Plaintiff claims that he insisted that he had done nothing wrong and, in front of the bouncer, informed Schaffer of what happened. The bouncer, Plaintiff further avers, nodded in approval and confirmed what Plaintiff had said (while at the same time laughing at Plaintiff), and Schaffer then ordered other officers to arrest and charge Plaintiff with disorderly conduct. While being arrested, Plaintiff asserts, Plaintiff saw that Pina had returned and was standing outside his vehicle watching Pina with a menacing look.

2

Plaintiff alleges that he was arrested, charged with disorderly conduct, and ultimately spent the night in jail. But the City, he further alleges, later dismissed the charge on July 15, 2022.

Plaintiff also alleges that he filed a complaint against the Officers, which was then escalated to COPA (the Civilian Office of Police Accountability). He asserts that COPA released a Final Summary Report and that the Final Summary Report stated that investigators retrieved Pina's body worn camera ("BWC"), which captured Pina's interaction with Plaintiff, showing that, after driving away from Plaintiff, Pina called an unknown individual. Plaintiff quotes a portion of the Final Summary Report that in turn quotes from the BWC footage in which Pina tells the unknown individual to "lock" the door and to "stop talking to these fucking n*****s." Plaintiff alleges that Pina received a 180-day suspension for departmental violations, including using the N-word.

According to Plaintiff, at no point before or during the police encounter, did Plaintiff or his friend engage in conduct that would have given the Officers probable cause to arrest him. Instead, he says, Pina was working with Schaffer and the Dublin's bouncer to "have him arrested without probable cause and maliciously prosecuted; all because of his race as an African American."

## DISCUSSION

The City and the Officers have moved to dismiss all four counts as applied to them for failure to state a claim. A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6); see Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). To survive one, the complaint must provide the defendant with fair notice of a claim's basis and must be facially plausible. Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

The court begins with Counts II and III—the Illinois state law claims for malicious prosecution and for a hate crime. The City and the Officers argue that those claims are barred under the Illinois Tort Immunity Act, 745 ILCS 10/8-101(a), which sets a one-year statute of limitations for such claims. In response, Plaintiff concedes that "the state law claims advanced against the City and its employees . . . are untimely" and thus "do[es] not oppose their dismissal." The court therefore dismisses with prejudice Counts II and III against the City and the Officers.

The court next turns to Count I— Plaintiff's section 1983 claim against the Officers for false arrest and malicious prosecution in violation of the Fourth Amendment. The Officers argue that Count I must be dismissed for two reasons: (1) there was probable cause to arrest Plaintiff for disorderly conduct; and (2) there was at least arguable probable cause such that they are entitled to qualified immunity. The existence of probable cause would indeed defeat Plaintiff's claim for false arrest and malicious prosecution. Neita v. City of Chi., 830 F.3d 494, 497 (7th Cir. 2016) ("To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest"); Biddle v. Martin, 992 F.2d 673, 678 (7th Cir. 1993) ("Because probable cause existed for Biddle's arrest, his malicious prosecution claim is barred."). If there was even "arguable probable cause," the Officers would be entitled to qualified immunity. Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 714-15 (7th Cir. 2013)

4

(qualified immunity "protects officers who reasonably but mistakenly believe that probable cause exists"). But the issue here is whether the Officers can establish the existence of probable (or arguable probable) cause at this procedural stage—on a Rule 12(b)(6) motion to dismiss—and, in particular, whether they can use extrinsic evidence to do so. The court finds that they cannot.

The Officers' argument for dismissing Count I hinges entirely on material they attach to their motion—namely, two separate BWC video files (one from Schaffer and one from Pina) and a copy of a criminal complaint for disorderly conduct from a complaining witness, Jeffrey Pesek, that was lodged the same day as Plaintiff was arrested. They say that the court may consider this evidence, which definitively establishes probable cause or at least arguable probable cause. The court can consider the video files, they argue, because Plaintiff refers to Pina's BWC in his complaint. And the court can consider Pesek's complaint, they contend, because it is from a criminal court file and so the court may take judicial notice of it. They then walk through the content of the videos (primarily the Schaffer video) and contend that "[i]t is clear from the[m] that Plaintiff's actions were unreasonable, disturbed others, and provoked a breach of the peace." They further contend that the Officers were "allowed to rely on Mr. Pesek's allegations" in his criminal complaint in assessing that "probable cause to arrest Plaintiff existed because Mr. Pesek's allegations were supported by Plaintiff's own actions." For his part, Plaintiff does not assert in response to the motion that the videos fail to establish that the Officers had probable cause to arrest him for disorderly conduct or that Pesek's complaint should not be considered. Plaintiff's entire argument instead boils down to this: the court should refrain from considering the BWC footage in deciding the motion to dismiss.

5

The court declines to rule on the motion to dismiss Counts I and IV based on the videos and the Pesek complaint and instead will convert the motion on those counts to a Rule 56 motion for summary judgment. The general rule is that a court may not consider extrinsic material while deciding a Rule 12(b)(6) motion to dismiss without converting that motion to a Rule 56 motion for summary judgment. See 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002); Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). But there is a "narrow exception to the general rule." 188 LLC, 300 F.3d at 735 (cleaned up). Specifically, the court may consider any such materials if they are attached to, or referenced in, the plaintiff's complaint and are central to the claim. Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013) (district courts may consider "exhibits attached to the complaint . . . or documents referenced in the pleading if they are central to the claim" in considering a motion to dismiss (citations omitted)). The purpose of this "incorporation-by-reference doctrine" is to prevent "a plaintiff from evading dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proves his claim has no merit." Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up). And the doctrine applies to both documents and video recordings. See Bogie, 705 F.3d at 609 ("it makes eminently good sense to apply these principles to video recordings attached to or referenced in a complaint" (cleaned up)).

The court finds that the Officers have not established that the video recordings that they have attached are incorporated by reference in the complaint. The Officers argue that the court "may consider the Officers' BWC because it is clearly referenced in the Complaint, is central to

Plaintiff's claims, and contradicts the allegations in Plaintiff's Complaint." According to the Officers, "there is no dispute" that Plaintiff's allegations "assert facts he knows only because he viewed the BWC that he then included in his Complaint in order to craft his argument and formulate his allegations, especially those involving racial animus." Plaintiff counters that the complaint "contains no direct reference to the [BWC] footage" and instead "references the COPA report, which, in turn, references the BWC footage of Pina using a racial slur after he drove away from the scene." He further asserts that the footage referenced in the COPA report "is of a different timeframe."

The court is not convinced that it would necessarily be precluded, as Plaintiff suggests, from considering a video merely because the video footage was referenced by a separate intermediary document (here, the COPA report). Cf. 188 LLC, 300 F.3d at 735 (district court did not err in reviewing a document that defendant attached to a motion to dismiss where that document was explicitly referenced in another document (a contract) that the plaintiff attached to its complaint). But nor is it convinced that the Officers have shown that the two separate BWC video files they have attached to their motion are in fact referenced in and central to Plaintiff's complaint.

Indeed, the complaint does not reference Schaffer's BWC—period. See Short v. City of Rochester, No. 6:22-CV-06263, 2022 WL 17990106, at *3 (W.D.N.Y. Dec. 29, 2022) ("Defendant has cited no authority for the proposition that a reference to any video in a complaint means that a court may consider a completely different, unreferenced video on a motion to dismiss." (Emphasis in original)). And although the complaint references video footage from Pina's BWC, it is not clear that the Pina BWC video recording that the Officers

7

attach is the same video recording that it is referenced in the COPA report. The Officers, for example, have not pointed to where the language quoted in the complaint can be found in the Pina BWC video recording that they have attached. And they do not meaningfully challenge that the Pina BWC footage referenced in the COPA report is from a different timeframe—ostensibly from before the arrest took place. Nor is it clear that Plaintiff "assert[s] facts he knows only because he viewed the BWC," as the Officers contend. It instead appears that the facts alleged in the complaint were drafted based on viewing the COPA report—not the video footage itself.

In the end, this case is simply not like those in which the Seventh Circuit has permitted consideration of videos in ruling on a motion to dismiss. See, e.g., Esco v. City of Chicago, 107 F.4th 673, 678 (7th Cir. 2024) ("Esco concedes that the district court could consider the video from the body-worn cameras, as Esco referenced it in his complaint and according to Esco, it was 'dispositive of the issue of probable cause.'"); Bogie, 705 F.3d at 608-09 (plaintiff both referenced and physically attached the video—which was itself the basis of the alleged wrongs—to the complaint); Brownmark Films, 682 F.3d at 689 (plaintiff's complaint referenced the two specific videos, which were the basis of the copyright claims).

Because the Officers have not established that the video files attached to their motion have been incorporated-by-reference into the complaint, the court declines to decide the motion to dismiss based on them. Under the circumstances here, the court will treat the motion to dismiss as to count I (and by extension, as to count IV (indemnification)) as a Rule 56 motion for summary judgment and hereby notifies the parties of the same. See Fed. R. Civ. P. 12(d). Given this development, the court will give the parties the opportunity to supplement the record

8

as they see fit. See id. To that end, Plaintiff shall have 21 days from the date of this Memorandum Opinion and Order to submit any additional brief on the now pending motion for summary judgment. The City and the Officers shall then have 7 days to submit a response brief in support thereof. Finally, in light of the decision to treat the motion to dismiss as one for summary judgment, the court will consider the Peske complaint in ruling on the motion for summary judgment.

## CONCLUSION

The court grants in part the City and the Officers' motion to dismiss (Doc. 10). The court grants the motion as to Counts II and III and dismisses those counts as applied to the City and the Officers with prejudice. The court converts the motion to dismiss on Counts I and IV to a Rule 56 motion for summary judgment. Plaintiff shall have 21 days from the date of this Memorandum Opinion and Order to submit any additional brief on the now pending motion for summary judgment on Counts I and IV. The City and the Officers shall then have 7 days to submit a response brief in support thereof.

**ENTER:**

**Robert W. Gettleman
United States District Judge**

**DATE: December 5, 2024**